**Juan C. Chavez**, OSB #136428
**Brittney Plesser,** OSB #154030
**Alex Meggitt**, OSB #174131
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503-944-2270
Facsimile: 971-275-1839

Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| JEREMY IBARRA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY OF PORTLAND; LARRY GRAHAM; RYAN LEE; CHRIS LINDSEY; JEFFREY MCDANIEL; JOSEPH SANTOS; CHAD DREW; JACE HALL; JERRAD LITTLE; CORY SWEET; and JOHN DOES 1-25.<br><br>　　　　Defendants. | Case No.<br><br>COMPLAINT<br><br>Civil Rights Action (42 U.S.C. § 1983); Negligence and False Arrest (State Tort)<br><br>JURY TRIAL DEMANDED |

This is a civil rights and state tort law action against the above-named parties for the unconstitutional and tortious act of mass detaining protesters, including Mr. Ibarra. The City has engaged in a pattern and practice of chilling First Amendment protected speech and assembly by engaging in tumultuous and violent conduct that thereby creates public alarm. This conduct resulted in the unlawful seizure and detention of Mr. Ibarra, and in criminal charges being filed against him. A jury of his peers acquitted him of these charges.

## JURISDICTION

1. This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331, 1343(a)(3), (4). The court has supplemental jurisdiction over the State tort claims pursuant to 28 U.S. Code § 1367(a).

## VENUE

2. Venue is proper within the District of Oregon because all of the events giving rise to this claim occurred in this judicial district, and all defendants reside in this judicial district. 28 U.S.C. § 1391(b). The acts and practices alleged herein occurred in Portland, Multnomah County, Oregon.

## PARTIES

3. Jeremy Ibarra, Plaintiff, is a citizen of the State of Hawaii.

4. Defendant City of Portland (hereinafter, "City") is a political subdivision of the State of Oregon with the capacity to sue and be sued. The City runs the Portland Police Bureau.

5. Defendant Larry Graham is a retired officer with the Portland Police Bureau. At all relevant times, he was acting under color of law. He is sued in his individual capacity.

6. Defendant Ryan Lee is the Assistant Chief of the Portland Police Bureau. At all relevant times, he was acting under color of law. He is sued in his individual capacity.

7. Defendant Chris Lindsey is a Lieutenant with the Portland Police Bureau. At all relevant times, he was acting under color of law. He is sued in his individual capacity.

8. Defendant Jeffrey McDaniel is a Sergeant with the Portland Police Bureau. At all relevant times, he was acting under color of law. He is sued in his individual capacity.

9. Defendant Joseph Santos is a Sergeant with the Portland Police Bureau. At all relevant times, he was acting under color of law. He is sued in his individual capacity.

10.     Defendant Chad Drew is a Trooper with the Oregon State Police. At all relevant times, he was acting under color of law. He is sued in his individual capacity.

11.     Defendant Jace Hall is a Trooper with the Oregon State Police. At all relevant times, he was acting under color of law. He is sued in his individual capacity.

12.     Defendant Jerrad Little is a Trooper with the Oregon State Police. At all relevant times, he was acting under color of law. He is sued in his individual capacity.

13.     Defendant Cory Sweet is a Trooper with the Oregon State Police. At all relevant times, he was acting under color of law. He is sued in his individual capacity.

14.     Plaintiff does not know the names of Defendants John Does 1-25, and thus sues them under fictitious names. John Does 1-25 are any City employees who exercised command responsibility over, conspired with, aided and abetted subordinates, and/or directly or indirectly participated in Plaintiff's deprivation of civil rights as hereinafter alleged.

## FACTUAL ALLEGATIONS

**I.     Protests in Portland, OR: October 2016 to June 3, 2017.**

15.     Across the country, following the election of Donald Trump, far-right extremists have rallied for the causes of white supremacy, white nationalism, and general xenophobia. Since its formation in 2016, the right-wing extremist group, Patriot Prayer, marked Portland as a target for protest. Patriot Prayer's strategy and intent for doing so was to a) force a confrontation with leftist groups, b) utilize police departments' and city governments' increasing tendency toward imposing harsh crowd control measures on leftists, and c) intimidate groups into not showing up.

16.     In the months leading to the mass detention on June 4, 2017, PPB had repeatedly and consistently used disproportionate force against leftist, anti-Trump and/or police accountability protesters.

17. On October 12, 2016, then-Portland Mayor Charlie Hales, with a few months left in his administration, had negotiated a new collective bargaining agreement with the Portland Police Association, the bargaining union for Portland Police Bureau rank and file members. PPB, along with the Multnomah County Sheriff's Office, forcefully ejected protesters from City Hall. The Compliance Officer and Community Liaison (COCL), a group that monitors police use of force in Portland, found that the City inadequately trained its officers in de-escalation, and used excessive force on October 12, 2016.

18. Defendant Larry Graham, then the Incident Commander, and whom retained supervision over all police actions at this occurrence, told the Citizen Review Committee that he was "proud" of how his officers handled the "taunts" of the crowd. The Portland Police Bureau cleared all but one complaint (the one made by the person pepper-sprayed and pushed down the flight of stairs) made against their officers for their actions on October 12, 2016.

19. On November 10th-12th, 2016, anti-Trump protestors were subjected to force *en masse*, including pepper spray, flash bang grenades, pepper balls, bean bag rounds, tear gas, as well as mass arrest.[1]

20. On January 20, 2017, anti-Trump protesters were again subjected to use of force *en masse*. PPB fired tear gas, rubber bullets, pepper balls, and other explosives into a crowd of peaceful protesters.[2]

21. On February 20, 2017, anti-Trump protesters held a "Not My President's Day" rally. PPB rushed a non-violent crowd, tackling and pushing people to the ground, resulting in several

---

[1] Alex Milan Tracy, Portland Anti-Trump 'Riot' Sees Dozens Arrested, Clashes With Police, November 11, 2016. https://www.nbcnews.com/news/us-news/portland-anti-trump-riot-sees-dozens-arrested-clashes-police-n682411
[2] Doug Brown, Police Blasted and Tear Gassed an Inauguration Day Protest, *Portland Mercury*, January 25, 2017. https://www.portlandmercury.com/news/2017/01/25/18814554/police-blasted-and-tear-gassed-an-inauguration-day-protest

arrests and injuries. Mayor Ted Wheeler decried the lack of "tactics that deescalate tensions" and called PPB's actions a "mistake."[3]

22.     In contrast, when members of the group Patriot Prayer convened a rally on April 29, 2017, PPB did not use these harsh crowd control tactics on them, despite their flagrant displays of weapons. The members of this rally were then placed on TriMet buses and escorted away from the scene, while three counter-protesters were arrested.[4]

23.     On May 1, 2017, once more PPB used overbroad crowd control tactics to squash a protest lead by leftist groups. These groups first rallied then marched in the streets. The police declared the entire assembly unlawful within an hour after the march began, purportedly because of a few objects thrown at the back of the march. Owing to the lack of particularity to the order, many peaceful protesters were confused. PPB then began launching explosives at the crowd. This tumultuous conduct then spiraled into additional violence and property damage.[5]

   **II. June 4, 2017**

24.     On May 26, 2017, after engaging in a hateful, racist rant against two teenagers, Jeremy Christian, an attendee of Patriot Prayer's April 29, 2017 rally, fatally stabbed two people on a MAX train, and grievously injured another. Despite public outcry, Patriot Prayer decided to hold a rally on June 4, 2017 in downtown Portland.

---

[3] Doug Brown, Mayor Ted Wheeler: Monday's Police Response To Trump Protest a "Mistake", *Portland Mercury*, February 21, 2017. https://www.portlandmercury.com/blogtown/2017/02/21/18856914/mayor-ted-wheeler-mondays-police-response-to-trump-protest-a-mistake

[4] Doug Brown, Photos & Video: Saturday's Right Wing March, Left Wing Protest in Montavilla, *Portland Mercury*, April 29, 2017. https://www.portlandmercury.com/blogtown/2017/04/29/18983985/photos-and-video-saturdays-right-wing-march-left-wing-protest-in-montavilla

[5] Doug Brown, Civil Rights Groups Criticize "Disproportionate and Dangerous" Police Response on May Day, *Portland Mercury*, May 10, 2017. https://www.portlandmercury.com/blogtown/2017/05/10/19004396/civil-rights-groups-criticize-disproportionate-and-dangerous-police-response-on-may-day

25.  Mr. Ibarra was not a frequenter of protests, but he felt so strongly about showing up for his community following the MAX attacks that he decided to join a thousand other counter-protesters on June 4, 2017.

26.  Patriot Prayer was barricaded in Terry Shrunk Park by police in riot gear for most of the afternoon. At some point, a decision was made to clear Chapman Square, where counter-protesters had rallied. This decision and order, and subsequent decisions and orders regarding conduct by PPB and its partner agencies, such as the Oregon State Police, were made by Defendants City of Portland, Graham, Lee, Lindsey, McDaniel, Santos, and John Does 1-10.

27.  Per PPB directives, when working with other agencies, like the Oregon State Police, under the guise of "Crowd Management," the "Bureau [Incident Commander], or their designee, shall appropriately brief outside agency personnel prior to their deployment… shall maintain the authority to determine tactical objectives; direct the overall police response (all agencies); and determine, when objectively reasonable, how and when force may be used and when to deploy less lethal munitions to address civil disturbance and/or disperse the crowd." PPB Directive 0635.10.7.1.1-2. Further, the directives state, "the Bureau expects assisting agencies to act in accordance with the lawful orders of the Bureau IC; however, their members' conduct is subject to the outside agency's policies and procedures." PPB Directive 0635.10.7.1.1.3

28.  Without individualized probable cause to do so, PPB began pushing against the group *en masse*, forcing people up against each other and causing confusion.

29.  PPB then deployed pepperballs, deafening LRAD announcements, flash bang grenade and sting ball explosions, and chemical weapons onto the crowd, including Mr. Ibarra.

30.  Mr. Ibarra tried to comply with PPB's orders to head north. While heading north for four city blocks, Mr. Ibarra attempted to leave SW Fourth Avenue, but could not because the City had

blocked those streets with deployed officers. Mr. Ibarra had no choice but to continue traveling north on SW Fourth with a group of about 200 people.

31.     Defendants then trapped that group of counter-protesters and by-standers on SW Fourth Ave between SW Alder or SW Morrison. At first, Defendants ordered Mr. Ibarra and the group to disperse, but there was nowhere to go because the City had barricaded the group.

32.     The intent to detain people on this city block was not premised on constitutional grounds. As Chief Mike Marshman said at the time, the purpose was "to separate them from the free speech rally that they were protesting against."[6] True to this fact, PPB officers were escorting Patriot Prayer members out of Terry Shrunk Plaza.

31.     However, at the time of the mass detention, Defendants informed the crowd that they had been "detained for purposes of investigation of disorderly conduct." Defendants detained almost 400 people, some of whom had not been marching, nor participating in any protest activity, such as journalists, and even passers-by just trying to get to Starbucks.

32.     Frightened by the violence he had just witnessed perpetrated by PPB, Mr. Ibarra tried to get out of what he reasonably believed to be a dangerous situation. When Mr. Ibarra attempted to run out of the crowd contained by police officers, two officers allegedly stepped in his way and he ran directly into them. After colliding with these officers, a number of police shot pepperballs at his chest. Defendants Drew, Hall, Little, Sweet, and John Does 11-20 participated in Mr. Ibarra's mass detention and the violation of his constitutional rights.

33.     Mr. Ibarra was charged with Disorderly Conduct, a charge for which he was acquitted by a jury on May 10th, 2018.

///

---

[6] Maxine Bernstein, <u>Portland police chief defends riot gear, clearing park during June 4 protests</u>, The Oregonian (June 23, 2017) http://www.oregonlive.com/portland/index.ssf/2017/06/portland_police_chief_defends.html

## Claim 1: Fourth Amendment – Unlawful Use of Force – Individual Liability
### (42 U.S.C. § 1983)

34. Plaintiff restates and incorporates Paragraphs 1 through 33.

35. It is clearly established law that an officer may not seize a person without probable cause to do so.

36. In taking the actions described above, Defendants personally participated in and intentionally violated Mr. Ibarra's rights guaranteed by the Fourth Amendment to the United States Constitution.

37. The unreasonable seizure of Mr. Ibarra was the direct and proximate cause of his suffering, loss of liberty, mental and emotional suffering, worry, fear, anguish, shock, anxiety, and nervousness. Plaintiff are entitled to all of their damages in an amount to be ascertained according to proof at trial.

## Claim 2: Fourth Amendment – Unlawful Pattern and Practice – Municipal Liability
### (42 U.S.C. § 1983)

38. Mr. Ibarra restates and incorporates here the allegations in paragraphs 1 through 37.

39. As described in Claim 1, Defendants violated Mr. Ibarra's constitutional right to be free from unreasonable seizures.

40. Defendants' conduct is illustrative of a pattern and practice of PPB officers violating the Fourth Amendment rights of protesters through a practice of mass detention, punishment, and targeting.

41. Defendant City of Portland does not have adequate supervisory review of incidents where officers violate these Fourth Amendment rights. Defendant City of Portland has effectively condoned this practice by repeatedly failing to correct it.

42. Defendants City of Portland and John Does 21-25 failed to train and discipline its officers, including Defendants, in following constitutional norms, as described above.

43. The unreasonable seizure of Mr. Ibarra was the direct and proximate cause of his suffering, loss of liberty, mental and emotional suffering, worry, fear, anguish, shock, anxiety, and nervousness. Plaintiff are entitled to all of their damages in an amount to be ascertained according to proof at trial.

**Claim 3: First Amendment – Illegal Abridgement of Speech – Individual Liability**
**(42 U.S.C. § 1983)**

44. Mr. Ibarra restates and incorporates here the allegations in paragraphs 1 through 43.

45. Under the First Amendment, a citizen has the right to free expression. Mr. Ibarra was engaged in a constitutionally protected activity that did not violate any law.

46. As described above, Defendant Officers' actions against Mr. Ibarra would chill a person of ordinary firmness from continuing to engage in the protected activity, as repeated and frequent deployment of harsh crowd control tactics and overbroad mass detentions would.

47. This illegal abridgment of the Mr. Ibarra's rights to free speech was the direct and proximate cause of loss of liberty, physical illness, mental and emotional suffering, worry, fear, anguish, shock, anxiety, and nervousness. Mr. Ibarra is entitled to all of his damages in an amount to be ascertained according to proof at trial.

**Claim 4: First Amendment–Illegal Abridgment of Free Speech–Municipal Liability**
**(42 U.S.C. § 1983)**

48. Mr. Ibarra restates and incorporates here the allegations in paragraphs 1 through 34.

49. Defendant Officers acted under color of state law and deprived Mr. Ibarra of his particular rights under the United States Constitution.

50. Defendant Officers were following a practice or custom of Defendant City to cause the deprivation of Mr. Ibarra's rights by targeting protestors for arrest, mass violence, and without probable cause. Furthering this practice, Defendant City has either failed to train its officers about well-settled case law, or is openly flouting training its officers about said case law to allow the targeting of protestors. These repeated constitutional violations have been not properly investigated, nor have the violators been disciplined, reprimanded or punished.

51. As a result of the above-described conduct, Defendants caused Mr. Ibarra to suffer emotional distress, discomfort, fear, frustration, and humiliation, including attendant physical symptoms of emotional distress, and may suffer further damages in an amount to be determined by a jury.

### Claim 4: State Torts

**Count 1: Negligence**

52. Mr. Ibarra realleges paragraphs 1 through 51.

53. By taking the actions they did on June 4, 2017, Defendant City of Portland created an unnecessary and unreasonable risk of harm against all present. It was foreseeable that Mr. Ibarra would be injured in the fashion described above. Despite knowledge of this risk, and the foreseeability of this injury, Defendant breached their duty owed to Mr. Ibarra, damaging him.

54. Defendant City's negligence was the direct and proximate cause of his suffering, loss of liberty, mental and emotional suffering, worry, fear, anguish, shock, anxiety, and nervousness. Mr. Ibarra are entitled to all of their damages in an amount to be ascertained according to proof at trial.

**Count 2: False Arrest**

55. Mr. Ibarra realleges paragraphs 1 through 54.

56. As alleged above, the City caused an imposition of unlawful restraint on Mr. Ibarra's freedom of movement.

57. Defendant City's false arrest was the direct and proximate cause of his suffering, loss of liberty, mental and emotional suffering, worry, fear, anguish, shock, anxiety, and nervousness. Mr. Ibarra is entitled to all of their damages in an amount to be ascertained according to proof at trial.

### REASONABLE ATTORNEY'S FEES AND COSTS

58. 42 U.S.C. § 1988(b) allows "the prevailing party… a reasonable attorney's fee as part of the costs…" in an action brought under 42 U.S.C. § 1983.

59. Mr. Ibarra requests that the Court grant a reasonable attorney's fee in this action.

### DEMAND FOR JURY TRIAL

60. For all claims alleged in this Complaint, Mr. Ibarra demands a jury trial.

### CONCLUSION

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

    A.    For economic and non-economic damages in an amount to be determined at trial;

    B.    For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988; and

    C.    Such other relief as the court deems just and proper.

DATE: June 4, 2019.

/s/ *Juan C. Chavez*
Juan C. Chavez, OSB #136428
Of Attorneys for Plaintiff
*LEAD ATTORNEY*

/s/ *Alex Meggitt*
Alex Meggitt, OSB #174131
Attorney for Plaintiff

                                    */s/ Brittney Plesser*
                                    Brittney Plesser, OSB #154030
                                    Attorney for Plaintiff

                                    Oregon Justice Resource Center